UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**YELLOWSTONE CLUB WORLD, LLC**,

Debtor.

Case No.  **09-60061-7**

*MEMORANDUM of DECISION*

At Butte in said District this 15th day of March, 2010.

In this Chapter 7 bankruptcy, the Trustee filed on November 19, 2009, an Objection to Proof of Claim No. 37 filed by Marc S. Kirschner, as the Trustee of the Yellowstone Club Liquidating Trust ("YCLT"), on November 10, 2009, wherein YCLT asserts an unsecured claim against the Debtor in the amount of $2,334,862.36.  YCLT subsequently amended Proof of Claim No. 37 on December 22, 2009, to assert an unsecured claim in the amount of $2,875,227.46 against the Debtor.  Briefs outlining three threshold issues with respect to the Trustee's Objection were filed in related Adversary Proceeding 09-00066 on January 8, 2010, by the Trustee and January 12, 2010, by YCLT.  This Memorandum of Decision sets forth the Court's findings of fact and conclusions of law with respect to the three threshold issues presented by the Trustee.

BACKGROUND

Timothy L. Blixseth ("Tim") and his former spouse, Edra Blixseth ("Edra"), were the

founders of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, Big Sky Ridge, LLC, and Yellowstone Club Construction Company, LLC, which limited liability companies are referred to generally by this Court as the Yellowstone Club entities.  Tim and Edra were also the founders of Yellowstone Club World, LLC, Big Springs Realty, LLC and BLX Group, Inc., f/k/a Blixseth Group, Inc. or BGI.  Tim was in control of all the aforementioned entities from inception until August 2008, when Tim turned ownership and control of said entities over to Edra pursuant to the couple's marital settlement agreement.  Shortly thereafter, on November 10, 2008, Edra caused the Yellowstone Club entities to seek protection under Chapter 11 of the Bankruptcy Code.  In addition, an involuntary bankruptcy petition was filed against Yellowstone Club World, LLC (the Debtor in this case) on January 25, 2009, Big Springs Realty, LLC filed a voluntary Chapter 7 bankruptcy petition on June 5, 2009, and an involuntary Chapter 11 bankruptcy petition was filed against BLX Group, Inc. on September 21, 2009.

An Order for Relief was entered in this involuntary Chapter 7 bankruptcy case on February 18, 2009, and the Chapter 7 Trustee, Ross P. Richardson, was appointed that same day.  On March 20, 2009, the Court ordered Timothy L. Blixseth, Edra Blixseth and Dieter Huckestein to prepare and file schedules.  Dkt. 34.  Edra filed Schedules on behalf of the Debtor on June 12, 2009.  A balance sheet as of December 31, 2008, filed by Edra lists a note payable to "Yellowstone Development" of $91,994.11.  Said amount is also included on Schedule F prepared by Edra.  That same Schedule F lists "Loren and Jill Bough" as unsecured creditors having a claim of $1,500,000 for a membership deposit.  The Trustee then filed on June 16,

2009, the schedules and statements he received from Tim and Dieter Huckestein.[1] Schedule F supplied by Tim, which "[is] true and correct to the best of his knowledge and belief based upon information through August 13, 2008," lists obligations of $120,985.00 owed to Yellowstone Mountain Club for "5/2/06 payments for A/P on behalf of Debtor" and of $1.5 million owed to Yellowstone Development with an explanation that it was "[a]ssigned by Loren Bough to Yellowstone Development, LLC in December 2007." Dieter Huckestein lists only two debts on Schedule F that he prepared for the Debtor, and the debts are owed to Dieter Huckestein for employee expense and guaranteed sublease expenses.

Pursuant to the Yellowstone Club entities' confirmed Third Amended Chapter 11 plan, the bankruptcies of Yellowstone Mountain Club, LLC, Yellowstone Development, LLC, and Yellowstone Club Construction Company, LLC were substantively consolidated, and are being jointly administered with the Chapter 11 bankruptcy of Big Sky Ridge, LLC, under Case No. 08-61570. In addition, pursuant to the Yellowstone Club entities' confirmed Third Amended Plan and a certain Assignment and Assumption Agreement, YCLT is the successor-in-interest to various claims of the Yellowstone Club entities. Marc S. Kirschner, the designated trustee of YCLT, is authorized to administer, dispute, object and compromise all general unsecured claims of the Yellowstone Club entities.

In his Objection to Proof of Claim No. 37, the Trustee argues that YCLT's Proof of Claim is not supported by adequate documentation to support the claim, that Yellowstone Mountain Club, LLC and Yellowstone Development, LLC failed to disclose in their Disclosure

---

[1] Dieter Huckestein is apparently a 10% shareholder in the Debtor and was Debtor's former Chief Executive Officer.

3

Statement the alleged claims against the Debtor in this case, that $1.5 million of the claim is barred by the statute of frauds and that the same $1.5 million is barred because the assignment of the underlying obligation to Yellowstone Development, LLC was prohibited by the Debtor's Membership Agreement.  In response to the Trustee's Objection, YCLT filed amended Proof of Claim No. 37 on December 22, 2009.

Pursuant to the Notice of Chapter 7 Bankruptcy Case, Meeting of Creditors, & Deadlines docketed July 15, 2009, the claims bar date for all creditors, except governmental units, to file proofs of claim was set for November 10, 2009.  As previously noted, YCLT filed its initial proof of claim on November 10, 2009, and then amended its proof of claim on December 22, 2009.

In a Memorandum of Law in Support of Claim # 37, filed December 31, 2009, at dkt. 135, YCLT explains that Amended Proof of Claim No. 37 makes the following general changes to the original Proof of Claim No. 37:

> a. The date of the $1.5 million claim related to the Loren Bough transaction is adjusted to March 10, 2008, and this claim is described in greater detail and with further documentation, including the Seller's Closing Statement that reflects that the Debtor was relieved of a $1.5 million obligation to Mr. Bough and that YD received $1.5 million less as a result of the transaction. An intercompany receivable arose from the transaction, as reflected by the financial records.
>
> b. Further information is provided regarding the intercompany receivables of $120,985, which were recorded on Debtor's schedules.
>
> c. The Yellowstone Trustee's claim for other intercompany receivables (former section "C") has been withdrawn.
>
> d. A new claim related to a $1 million transfer from YD to the Debtor, as reflected by the bank and financial statements, is made.
>
> Prior to having a hearing on the full merits of the Trustee's Objection, the parties

4

requested leave to submit various threshold issues to the Court. Such request was granted and in a "Brief re: Threshold Issues Pursuant to January 8, 2010, Order," filed January 8, 2010, in related Adversary Proceeding 09-00066, the Trustee formulated three threshold issues, which the Court will address seriatim.

> 1. Whether the alleged assignment of Loren Bough's alleged claim for refund of YCW membership deposit is enforceable ($1,500,000).

With respect to all three components of the Trustee's threshold objection, Rule 3001(f), F.R.B.P., provides that a proof of claim completed and filed in accordance with 11 U.S.C. § 501 and any applicable Bankruptcy Rules constitutes prima facie evidence of the validity and amount of the claim. Thus, if a procedurally proper claim is filed, the objecting party carries the burden of going forward with evidence contesting the validity or amount of the claim. *In re Weber*, 16 Mont. B.R. 49, 56 (Bankr. D. Mont. 1997); *Wright v. Holm (In re Holm)*, 931 F.2d 620, 623 (9th Cir. 1991). However, once the objecting party succeeds in overcoming the prima facie effect given to the claim by Rule 3001(f), the burden shifts to the claimants to prove the validity of their claims by a preponderance of the evidence. *In re Allegheny Int'l, Inc*. 954 F.2d 167, 173-74 (3rd Cir. 1992). This Court discussed in more depth the applicable law governing the burden of proof for allowance of claims in *In re Eiesland*, 19 Mont. B.R. 194, 208-09 (Bankr. D. Mont. 2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.*, 223 F.3d 1035, 1039 (9th Cir. 2000):
>
>> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes "*prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a

5

> proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
>
> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm )*, 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502-22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.)*, 178 B.R. 222, 226 (9th Cir. BAP 1995), *aff'd*, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm*, 931 F.2d at 623.
>
> * * * *
>
> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer*, 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173-74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm*, 931 F.2d at 623.

*See also Knize*, 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America*, 818 F.2d 1135, 1143 (5th Cir.1987); *In re Stoecker*, 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part*, 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell*, 223 F.3d at 1039 (quoting *Holm*). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell*, 223 F.3d at 1039 (quoting *In re Consol. Pioneer*, 178 B.R. at 226).

The analysis under *Lundell v. Anchor Const. Specialists* was reiterated by the Ninth Circuit in *In*

*re Los Gatos Lodge, Inc.*, 278 F.3d 890, 894 (9th Cir. 2002).

YCLT's initial proof of claim filed on November 10, 2009, asserts a claim of $1,500,000, explained as follows: "Prior to December 2007, Debtor owed Loren Bough $1,500,000.00. Sometime during December of 2007, Mr. Bough assigned this debt to Yellowstone Development." YCLT's initial proof of claim includes $167,671.23 of interest for the assigned claim. YCLT's entitlement to a claim of $1,500,000.00 in its initial proof of claim is supported solely by the Schedule F provided to the Trustee by Tim.

YCLT's amended Proof of Claim No. 37 filed on December 22, 2009, provides additional documentation with respect to the $1,500,000.00 transfer. However, contrary to YCLT's assertion that substantial evidence supports its $1,500,000 claim, the additional documentation does not entitle YCLT's $1,500,000 claim to the prima facie effect afforded by Rule 3001(f).

The Court first notes that the Debtor in this case was not a party to: (1) the Real Estate Purchase and Sale Agreement between Yellowstone Development, LLC, Yellowstone Mountain Club, LLC and Loren Bough; (2) the closing statement between Loren Bough, as buyer/borrower, and Yellowstone Development, LLC and Yellowstone Mountain Club, LLC, as seller; or (3) the closing instructions. The Debtor was, however, a party to the assignment wherein Loren Bough assigned his membership deposit refund rights to Yellowstone Development, LLC and Yellowstone Mountain Club, LLC, but the assignment, in and of itself, does not make the assignment valid. The amended proof of claim with the attached assignment may initially constitute prima facie evidence that the assignment is valid but it does not prevent an objection being raised pursuant to F.R.B.P. 3007 that defeats the prima facie effect of the validity or amount of the claim when the validity of the assignment is questioned.

Interestingly, the Membership Agreement that YCLT attaches to its exhibits is missing page 2. The Membership Agreement submitted into evidence by the Trustee, which does not contain pages 3 or 4, does contain page 2. Page 2 of the Membership Agreement provides that "[a] Club membership may not be assigned, transferred, sold, encumbered or hypothecated, except where specifically allowed by the Membership Plan. Any attempted assignment, transfer, sale, pledge, encumbrance or hypothecation shall be void and of no force or effect." Loren Bough's right to a refund of his membership deposit is arguably tied to his Yellowstone Club World Membership. Based upon the language on page 2 of the Membership Agreement, Loren Bough can only transfer his Yellowstone Club World Membership, and the right to any refund of his membership deposit, as allowed by the Membership Plan. In this case, YCLT did not produce the Membership Plan. Having failed to submit page 2 of the Membership Agreement and having failed to produce the Membership Plan, the Court finds that YCLT's initial proof of claim and its amendment does not constitute prima facie evidence that the assignment is valid under the Membership Plan. Such validity of the assignment vis-a-vis the Membership Plan is a question that warrants a hearing to determine whether the Bough claim of $1.5 million is valid and properly assigned to the Yellowstone Club entities.

YCLT further argues that $1,500,000 of its claim is confirmed by the Debtor's Schedule F, which lists the $1.5 million claim owed by Debtor to Yellowstone Development, LLC and Yellowstone Mountain Club, LLC, pursuant to Rule 3003(b)(1), which states that debtor's "schedule of liabilities filed pursuant to § 521(1) of the Code shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent, or unliquidated." Brief, Dkt. 47, ¶ 21, p. 7.

YCLT's argument based on F.R.B.P. 3003(b)(1) warrants little discussion. F.R.B.P. 3003 applies only to chapter 9 and chapter 11 cases; it does not apply in a chapter 7 case. *See* F.R.B.P. 3003(a). Debtor's case is an involuntary chapter 7 case. F.R.B.P. 3002 applies. F.R.B.P. 3003(b)(1) only applies in a chapter 9 or 11 case wherein the filed schedules of liabilities "shall constitute prima facie evidence of the validity and amount of the claims of creditors, unless they are scheduled as disputed, contingent or unliquidated." A non-governmental creditor in Debtor's chapter 7 case, such as the liquidating trustee (YCLT), was required to file a proof of claim on or before the claims bar date, which he did on November 10, 2009. *See* 11 U.S.C. §§ 501 and 502, and F.R.B.P. 3002(c).

    2.    Whether the [YC]LT's proof of claim must be rejected because it was amended after the claims bar date.

The Court now considers the portion of the amended claim concerning the account payable for $121,288.78 and the $1 million Tamarindo Loan. YCLT's initial proof of claim included a claim of $120,985.00 for accounts payable on behalf of the Debtor. YCLT amended its claim to classify this amount as intercompany receivables in the approximate amount of $121,288.78. In support of such claim, YCLT relies on Schedule F filed by Tim. However, Edra, lists a debt owed to Yellowstone Development, LLC of $91,994.11. "[O]rdinarily an amendment to a proof of claim is freely permitted so long as the claim initially provided adequate notice of the existence, nature, and amount of the claim as well as the creditor's intent to hold the estate liable, but a truly new claim should not be permitted." *In re CF&I Fabricators of Utah, Inc.*, 148 B.R. 332, 342 (Bankr. D. Utah 1992) (quoting *In re Unioil, Inc.*, 962 F.2d 988, 993 (10th Cir. 1992). However, "[a]lthough amendments to proofs of claim may be freely permitted

9

'to cure a defect in the claim as originally filed,' a creditor may not assert new claims after the bar date under the guise of amending its claim." *Id.* (quoting *In re Unioil, Inc.*, 962 F.2d 992. "In *In re Westgate-California [Corp.]*, 621 F.2d 983 (9th Cir.1980), the court rejected untimely amended proofs of claim. Without identifying the nature of the claims involved, the court simply stated that the amended proofs 'cannot relate back to the date of the original proofs because the original claims did not give *fair notice of the conduct, transaction, or occurrence* that forms the basis of the claim asserted in the amendment.' (Emphasis added.)" *In re Solari*, 63 B.R. 115, 117 (9th Cir. BAP 1986). YCLT's initial timely proof of claim provided such notice as to the claim for the accounts payable in the amended amount of $121,288.78; the amended amount is however subject to question. Given the conflicting amounts and an issue as to what amount arises from the transaction, the Court finds that the initial proof of claim and its amendment do not constitute prima facie evidence of the validity and amount of the claim. A subsequent evidentiary hearing on this portion of the claim is warranted to determine the correct amount.

  In its amended Proof of Claim No. 37 filed December 22, 2009, YCLT states that the amount claimed includes "[a] new claim related to a $1 million transfer from YD to the Debtor" for the "Tamarindo Loan." YCLT argues that its new claim of $1 million may relate back to the date of the initial proof of claim if the initial claim gave "fair notice of the conduct, transaction or occurrence that forms the basis of the claim asserted in the amendment." *Westgate-California*, 621 F.2d at 984. YCLT's initial proof of claim gives no notice whatsoever that YCLT is asserting a $1 million claim associated with funding of the Tamarindo project. In fact, YCLT, in its brief, states that it thought the $1 million claim had been paid. YCLT's amended claim as to the $1 million transfer "does not purport to cure a defect in the timely filed claim, nor does it

10

describe the claim with greater particularity." *Solari*, 63 B.R. at 117. The Court exercises its discretion and finds that the new claim of $1 million does not relate back to YCLT's initial and timely filed proof of claim. The new claim of $1 million, or that amount to be determined at an evidentiary hearing, will be treated as a tardily filed claim under 11 U.S.C. § 726(a)(2) or (3).

> 3. Whether the failure to describe the claims in the [Yellowstone Club entities'] disclosure statement precludes the [YC]LT from asserting those claims now.

This question considers judicial estoppel. The analysis for judicial estoppel involves a two step process: the facts must warrant judicial estoppel; and a remedy must be available that does not needlessly punish the innocent. *See In re An-Tze Cheng* 308 B.R. 448, 452 (9th Cir. BAP 2004). "There are three general approaches to judicial estoppel: (1) requiring (like equitable estoppel) that the party injured by the changed position have relied on the first position; (2) merely requiring that the court have relied on, i.e. accepted, the earlier position; and (3) encompassing unseemly adversary behavior that constitutes "playing fast and loose" with the court. Wright, Miller & Cooper § 4477 at p. 550." *Cheng*, 308 B.R. at 453. *See New Hampshire v. Maine*, 532 U.S. 742, 750-51, 121 S.Ct. 1808 (2001). "The fact that a debtor may be performing representational duties of a trustee potentially makes a difference in assessing whether putatively inconsistent positions qualify as such for judicial estoppel purposes because well-settled jurisprudential principles tolerate inconsistent positions taken in different representational capacities." *Cheng*, 308 B.R. at 455. At least four basic scenarios may arise when debtors are performing duties of the trustee: " (1) a debtor may be judicially estopped on account of an earlier inconsistent position taken as debtor; (2) a debtor in possession may be judicially estopped on account of an earlier inconsistent position taken as debtor in possession;

11

(3) a debtor may be judicially estopped on account of an earlier inconsistent position taken as debtor in possession; (4) a debtor in possession ordinarily may not be judicially estopped on account of an earlier inconsistent position taken as debtor." *Cheng*, 308 B.R. at 457-58. The YCLT was created post-confirmation pursuant to the terms of the confirmed plan to administer, dispute, object and compromise all general unsecured claims of the Yellowstone Club entities. Its role and capacity is different from the role and capacity of the prepetition debtors and the postpetition debtors in possession. Whether the prepetition debtors or debtors in possession failed to schedule assets of the estate or not, the YCLT is charged with administering all claims that its investigation may uncover and to distribute such assets to the creditors as determined under the terms of the confirmed plan. Given the facts in the Yellowstone Club entities' bankruptcies, the post-confirmation creation of the liquidating trust to investigate and pursue claims, and the principles of judicial estoppel identified above, the Court concludes that the failure to describe claims by the prepetition entities does not preclude the post-confirmation YCLT from pursuing claims on behalf of the creditors of the confirmed plan. The representational capacities are clearly distinguishable.

  For the reasons discussed above and after consideration of the threshold matters, the Court concludes that an evidentiary hearing is required to determine the validity of the Bough assignment in the amount of $1.5 million; that an evidentiary hearing is required to determine the amount of the intercompany receivables that may amount to $121,288.78; and that an evidentiary hearing is required to determine the amount of the tardily filed claim in the amount of $1 million involving the Tamarindo Loan.

  In accordance with the foregoing, the Court will enter a separate order providing as

follows:

IT IS ORDERED that after considering the threshold matters presented by the parties, the Trustee's Objection to Proof of Claim No. 37 filed November 19, 2009, dkt. 125, is SUSTAINED, in part, and OVERRULED, in part; and the remaining issues: concerning the validity of the Bough assignment in the amount of $1.5 million; concerning the amount of the intercompany receivables in the alleged amount of $121,288.78; and concerning the amount of the tardily filed claim in the alleged amount of $1 million involving the Tamarindo Loan, shall be held **Monday, June 21 and Tuesday, June 22, 2010, at 09:00 a.m.**, or as soon thereafter as the parties can be heard, in the BANKRUPTCY COURTROOM, RUSSELL SMITH COURTHOUSE, 201 EAST BROADWAY, MISSOULA, MONTANA.

BY THE COURT

_____
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana