UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MONTANA

In re

**YELLOWSTONE CLUB WORLD, LLC,**

Debtor.

Case No. **09-60061-7**

# MEMORANDUM OF DECISION

At Butte in said District this 10th day of June, 2010.

Pending in this Chapter 7 case is the Trustee Ross P. Richardson's ("Trustee") Motion, filed February 12, 2010 (Docket No. 168) for Order Approving Settlement ("Motion") with Timothy L. Blixseth ("Blixseth") and entities Blixseth controls. Several objections were filed, but all objections were resolved by settlement except a limited objection filed by CrossHarbor Capital Partners, LLC, and its subsidiaries ("CrossHarbor") (Dkt. 216 & 290). Two hearings have been held on the Trustee's Motion, including a telephonic hearing on June 2, 2010. At the June 2, 2010, hearing the Court heard argument from counsel, including John L. Amsden ("Amsden") for the Trustee and Benjamin P. Hursh ("Hursh") for CrossHarbor. At the conclusion of the June 2, 2010, hearing, the Court verbally overruled CrossHarbor's objection and granted the Trustee's Motion. This Memorandum sets forth the Court's reasoning after

1

consideration of the factors for approval of settlements set forth in *Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1380-81 (9th Cir. 1986) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986).

This Court has jurisdiction of this involuntary Chapter 7 case under 28 U.S.C. § 1334(a). The Trustee's Motion is a core proceeding under 28 U.S.C. § 157(b)(2).

## BACKGROUND FACTS & PROCEDURAL HISTORY

This involuntary Chapter 7 case began when petitioners Angus A. MacNaughton, Edgar A. Rainin, Yoav Rubinstein, and Thomas Hook filed an involuntary Chapter 7 petition on January 25, 2009. The petitioning creditors were represented by Amsden. An Order for Relief (Dkt. 17) was entered on February 18, 2009, without objection. Ross Richardson was appointed Trustee on February 18, 2009.

Richardson filed on March 20, 2009, an application (Dkt. 33) to employ Amsden as special counsel for the estate on a contingency fee basis. The application included a motion for approval of an unsecured credit advanced by the above-named petitioning creditors and for repayment as administrative expenses, to be non-recourse except as to successful litigation recoveries. The Trustee explained in the application that the estate has no liquid assets or any other resources or financial means to pursue recovery of assets for the estate. The Court granted the application and motion for the petitioning creditors to advance funds for litigation on behalf of the estate.

Blixseth and others were ordered to file Schedules. Blixseth's former spouse Edra Blixseth filed Schedules on June 12, 2009 (Dkt. 95). The Schedules listed no real property. Schedule B lists $14,491,222.48 in personal property, mostly consisting of accounts receivable

and other interests, listed at item 35, which consist of options for access to properties located in various locations, including Buffalo Bill Ranch in Cody, Wyoming, St. Andrews in Scotland, Tamarindo in Mexico, Farcheville Chateau in France, and Turks and Caicos Islands, several of which are in the control of Blixseth.  Schedule F lists unsecured creditors, including Blixseth with an unsecured claim in the amount of $12,245,844.99.  CrossHarbor is not listed as an unsecured creditor, and has not filed a Proof of Claim.  Additional Schedules were filed on June 16, 2009.

The Trustee filed objections to Proofs of Claim, including Claims filed by Blixseth, Yellowstone Club Liquidating Trust ("YCLT"), and Scotia Enterprises S.A. and Revalia-Comercio Internacional Sociedade ("Scotia").

Amsden commenced Adversary Proceeding No. 09-00086 on October 20, 2009, and filed amended complaints, the last on November 24, 2009.  The second amended complaint (Dkt. 9) avers claims for equitable subordination, declaratory judgment, fraudulent transfers, conversion, breach of fiduciary duties, indemnity, and unjust enrichment, and prays for damages and punitive damages.  Adv. No. 09-86 was consolidated with the Trustee's Objection to Blixseth's claim.

The Trustee filed a motion for partial summary judgment in Adv. 09-86 on December 3, 2009.  The Trustee's motion seeks summary judgment against entities controlled by Blixseth in the form of money judgments, based on unjust enrichment and constructive trust, and seeks declaratory relief declaring that "ownership interest option agreement" ("Options") on properties in Mexico and Turks and Caicos Islands are valid and enforceable.  Blixseth filed answers and a demand for jury trial, and a motion to continue the Trustee's motion for partial summary judgment pending discovery.  A hearing on the Trustee's motion for partial summary judgment

was held on December 22, 2009, after which the Court took the motion under advisement.

A mediation between the parties was scheduled to be conducted by Hon. John L. Peterson on February 11, 2010. The mediation resulted in a "Memorandum of Understanding" ("MOU") between the Trustee and Blixseth and Blixseth Entity Defendants, including Emerald Cay, Ltd. ("ECL"). The MOU provides in pertinent part:

> 1. Blixseth and ECL shall cause a first priority "debenture" and "charge" as appropriate under Turks & Caicos Island ("TCI"), to be issued in the amount of US$12.9 million jointly to YCW members and the Chapter 7 Trustee for a term of five years covering the property held by ECL commonly known as "Emerald Cay" (the "ECL Debenture"). The ECL Debenture shall bear no interest during the first two and one-half (2 ½) years, and shall bear interest at three and one-half (3 ½) percent on the outstanding principal for the remaining term, which interest shall accrue to the principal balance and be paid with principal upon maturity.
>
> 2. <u>Foreign Liquidation Proceedings:</u>
>
> Blixseth agrees to provide information and assistance to the Chapter 7 Trustee to prosecute Chapter 7 Trustee's claims as against Danika Investments Ltd, and the French property known as Chateau de Farcheville and the St. Andrews Int'l Golf course property in Scotland (the "Foreign Liquidation Proceedings");
>
> > a. Once US$4.7 million has been paid from the Foreign Liquidation Proceedings to the Chapter 7 Trustee, the Chapter 7 Trustee's interest in the ECL Debenture shall be extinguished and the YCW individual members shall hold the entirety of the US$12.9 million ECL Debenture;
> >
> > b. All sums received from the Foreign Liquidation Proceedings by the Chapter 7 Trustee over and above US$4.7 million shall be credited dollar for dollar against the US$12.9 million ECL Debenture;
> >
> > c. If there is any outstanding balance unpaid on the ECL Debenture as of the final payment from liquidation from the Foreign Liquidation Proceedings, the YCW members shall receive that unpaid mortgage balance upon the sale or refinance of the TCI

      property;

  3. <u>Assignment of Claims</u>:

      a. Blixseth's claims as against the YCW Estate as filed shall be allowed in full, and are hereby assigned to the YCW individual members;

      b. Blixseth and the Chapter 7 Trustee shall jointly prosecute the Chapter 7 Trustee's claims as against the Liquidation Trust in the Yellowstone Mountain Club bankruptcy case and all claims as against Cross Harbor, Sam Byrne and or any affiliated entities related thereto. Any amount received in excess of any allowed claims by the Liquidation Trust against the YCW Estate shall be paid to Blixseth. This agreement to jointly prosecute these claims includes the judgment in *Richardson v. Estates of Yellowstone Mountain Club, LLC, etc.*, Case No.: 09-00066, and the rights to enforce that judgment as against any party or fund including without limitation as against Cross Harbor and its principals;

4. This agreement shall be conditioned upon approval of the majority of the management of Desert Ranch management, LLC; and

5. Upon the effective date of this agreement and recording of the ECL Debenture, the Chapter 7 Trustee shall release any liens and or claims against any property owned by Blixseth and the Blixseth Entity Defendants in Case No.: 09-00086 and shall dismiss with prejudice Case No.: 09-00086 as against Blixseth and Blixseth Entity Defendants.

The Trustee filed his Motion to approve the MOU, Dkt. 168. Objections were filed by Scotia (Dkt. 171) and YCLT (Dkt. 179). CrossHarbor filed a joinder to YCLT's objection (Dkt. 216), and a supplemental objection to the assignment, in paragraph 3 of the MOU, of claims and joint prosecution of claims by Blixseth and the estate against CrossHarbor and Sam Byrne, on the grounds the Trustee believes there are no such claims and the Court should not approve the transfer of meritless claims. In Dkt. 290 CrossHarbor continues its objection to the assignment and joint prosecution provisions of the MOU and asks that they be stricken.

The first hearing on the Trustee's Motion was held at Missoula on March 5, 2010.  The Trustee Richardson appeared and testified, represented by Amsden.  Scotia was represented by attorneys Mary Jo. Heston and Magdalena Bragun.  CrossHarbor was represented by Hursh and Paul D. Moore.  The settling members of YCW were represented by Ford Elsaesser.  YCLT was represented by Shane P. Coleman and Robert L. Sterup, and Marc Kirschner, Trustee of YCLT, testified.  Blixseth was represented by Daniel Manson.  David P. Bender appeared representing Dieter Huckestein and Hotel Procurement Services LLC.

International financial consultant Stephan Garden ("Garden") testified regarding his investigation of the estate's claims, assets, and ledgers.  Exhibits ("Ex.") 1, 2, 17, 18, 19, 29A, 29D, 29E, 29F, 44, 46, 47, 48, S-1, S-2, S-3, S-4, S-5, S-6, S-7, S-8, S-9, S-10, S-11, S-12, S-13, S-14, S-15, S-16, S-17, S-18, S-19, S-20, S-21, S-22, S-23, S-24, and S-25, were admitted into evidence.  The Court took the Trustee's Motion under advisement after the hearing.

Another mediation was held on May 4, 2010.  Subsequently, settlements between the Trustee and Scotia, and between the Trustee and YCLT, and other creditors were filed and have been approved by the Court by Orders entered on June 2, 2010.  The settlements with Scotia and YCLT resolve their objections to the Trustee's Motion, Dkt. 168, for approval of the MOU, leaving only CrossHarbor's remaining "narrow" objection.

At the telephonic hearing held on June 2, 2010, Hursh appeared representing CrossHarbor and its affiliates in opposition to approval of the MOU.  Hursh argued that CrossHarbor continues to object to the assignment and joint prosecution provision 3(b) of the MOU because the Trustee testified that he did not feel he was giving up anything of value in assigning the

estate's claims against CrossHarbor to Blixseth, and he did not intend for the estate to participate actively in any claims against CrossHarbor or Sam Byrne. Hursh argued that Blixseth is seeking to use the assignment to perpetuate litigation against CrossHarbor. Hursh wanted the assignment and joint prosecution provisions stricken from the MOU. Amsden objected that striking those provisions would require renegotiation of the MOU. The Court agreed and overruled CrossHarbor's objection during the telephonic conference.

## DISCUSSION

This Court addressed the test for compromise and settlement under F.R.B.P. Rule 9019(a) in *In re Schrock*, 9 Mont. B.R. 414, 416-417 (Bank. D. Mont. 1991) as follows:

> "Although the bankruptcy court has great latitude in authorizing a compromise, it may only approve a proposal that is 'fair and equitable.'" *Woodson v. Fireman's Fund Ins. Co.*, 839 F.2d 610, 620 (9th Cir. 1988) (Citing *Martin v. Kane (In re A & C Properties)*, 784 F.2d1377, 1380-81 (9th Cir.) *cert. denied sub nom. Martin v. Robinson*, 479 U.S. 854, 107 S.Ct. 189, 93 L.Ed. 2d 122 (1986). In evaluating a settlement, the Court must consider:
>
>> '(a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views of the premises.' *A & C Properties*, 784 F. 2d at 1381.
>
> *Woodson*, 839 F. 2d at 620 (additional citation omitted).
>
> *See also In re MGS Marketing*, 111 B.R. 264 (9th Cir. BAP 1990). In addition to the four prong test set forth in *A & C Properties*, it is also well established that the law favors compromise. *In re Blair*, 538 F.2d 849, 851 (9th Cir. 1976). In

accordance with that principle, Bankruptcy Rule 9019(a) gives this Court broad authority to approve a compromise or settlement. *In re General Store of Beverly Hills*, 11 B.R. 539, 542 (9th Cir. BAP 1981). The determination of whether to approve a compromise or settlement is a matter within the sound discretion of this Court. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc.*, 13 B.R. 764, 765 (Bankr. N.D.Ga. 1981). *See also, In re Lions Capital Group*, 49 B.R. 163, 175-76 (Bankr. S.D. N.Y. 1985).

The Court begins by noting that only CrossHarbor's objection remains, and CrossHarbor's objection does not track the *A & C Properties* analysis. The first factor is probability of success in the litigation in Adv. No. 09-86. The objecting creditors offered no expert witness testimony of their own to counter the Trustee's testimony. He testified that he believed that his claims in Adv. 09-86 have merit but that they will be difficult to prove. The overwhelming factor in the whole analysis, however, is the Trustee's uncontroverted testimony that the estate, by itself, has no resources to fund this litigation, or any other litigation of the estate's claims in international forums in Scotland, France, Turks and Caicos Islands, and Mexico. Blixseth is vigorously defending Adv. 09-86, and the Trustee's claims include equitable claims involving difficult discovery and evidentiary issues. The Court concludes that the first *A & C Properties* factor weighs in favor of approving the MOU.

The second *A & C Properties* factor to be considered is the difficulties, if any, to be encountered in the matter of collection. The Trustee testified that he is concerned about the difficulty in collecting any judgment he might win in Adv. 09-86 because of the existence of foreign entities, and involvement of foreign courts in Scotland, Turks and Caicos, France, and especially Mexico[1]. He testified that Blixseth would vigorously defend against collection at

---

[1] For example, the Trustee testified that he was stunned to learn that, after spending $25,000 to record a lien against the subject property in Mexico, he still could not find out if the

every step, and that collection would require piercing the corporate veil. The Court finds that the second *A & C Properties* factor weighs heavily in favor of approval of the MOU.

The third *A & C Properties* factor to be considered is the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it. The Trustee's claims in Adv. 09-86, by themselves, are of sufficient complexity to conclude that the third factor weighs in favor of approval of the settlement. Garden testified that litigating the enforceability of the Options would require expert testimony and complex records. Adding to that the fact that each of the Options, except the ranch in Cody, will involve foreign courts and foreign laws, this factor is overwhelming in favor of settlement. Also on the third factor, it bears repeating that the estate has no resources of its own to finance any of this litigation. The costs are being fronted by the petitioning creditors. With approval of the MOU Blixseth's resources and cooperation make recovery in the foreign courts much more certain. The Court finds that the third *A & C Factor* weighs overwhelmingly in favor of approval of the MOU.

The fourth *A & C Properties* factor requires the Court consider the paramount interest of the creditors and a proper deference to their reasonable views of the premises. With the settlements with YCLT and Scotia, no objecting creditors remain. CrossHarbor is not a creditor and its view does not apply. The Trustee testified that the MOU contemplates bringing the estate a $4.7 million recovery before the ECL Debenture is extinguished, and nothing in the MOU prevents YCLT from pursuing its remedies against other parties. In the absence of any outstanding objection by a creditor, the Court finds that the fourth *A & C Properties* factor

---

lien had been recorded.

weighs in favor of approval of the MOU. All four *A & C Properties* factors weigh in favor of settlement.

CrossHarbor objects, but is not a creditor. This Court is not persuaded, and CrossHarbor has not shown, that it has standing to object to the Trustee's Motion to approve the MOU. In addition to the fact that all four *A & C Properties* factors weigh in favor of approval of the MOU, CrossHarbor failed to offer any evidence that it would actually be subject to litigation brought by Blixseth as a result of part 3 of the MOU, beyond what CrossHarbor and Sam Byrne are already engaged in against Blixseth *In re Yellowstone Mountain Club, LLC*, Case No. 08-61572-11, and related proceedings.

The ripeness requirement is intended to ensure that "issues presented are 'definite and concrete, not hypothetical or abstract.'" *Jacobus v. Alaska*, 338 F.3d 1095, 1104 (9th Cir. 2003), (quoting *Thomas v. Anchorage Equal Rights Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000) (en banc) (quoting *Railway Mail Ass'n v. Corsi*, 326 U.S. 88, 93, 65 S.Ct. 1483, 89 L.Ed. 2072 (1945)). CrossHarbor's objection is based on hypothetical or abstract threats of litigation by Blixseth, which if it ever was commenced CrossHarbor could introduce the Trustee's low opinion of the merit of any claims assigned by the estate to Blixseth. Considering that all four *A & C Properties* factors weigh in favor of approval of the MOU, against some hypothetical litigation which Blixseth might bring in the future against CrossHarbor and Sam Byrne, the Court concludes that CrossHarbor's objection fails to establish either standing or ripeness to grant relief.

In conclusion, after consideration of the *A & C* factors, the Court finds that they all weigh

in favor of approval of the settlement.  The Court finds that CrossHarbor lacks standing to object to the settlement, that CrossHarbor's objection is not ripe, that CrossHarbor's objection is irrelevant to the *A & C* factors, and as a result its objection is not well taken.

**IT IS ORDERED** a separate Order shall be entered in conformity with the above (1) overruling the remaining objections filed by CrossHarbor (Dkt. 216 & 290) to the proposed settlement; and (2) granting the Trustee's Motion for Order Approving Settlement, filed February 12, 2010 (Dkt. 168) and approving the "Memorandum of Understanding" between the Trustee and Timothy L. Blixseth.

BY THE COURT

/s/ Ralph B. Kirscher
HON. RALPH B. KIRSCHER
U.S. Bankruptcy Judge
United States Bankruptcy Court
District of Montana

.